# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:14-CV-00007-RLV

| | |
|---|---|
| SANDRA TORRES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff Sandra Torres' Motion for Summary Judgment (Doc. No. 9) and Commissioner Carolyn Colvin's Motion for Summary Judgment (Doc. No. 11). For the reasons discussed more thoroughly below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. Accordingly, the Commissioner's decision is **VACATED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

## I. PROCEDURAL SUMMARY

On March 5, 2011, Plaintiff Sandra Torres filed an application for Supplemental Security Income benefits due to disability under Title XVI of the Social Security Act. [Doc. No. 7-6] at p. 2; *see* 42 U.S.C. § 1382c. In her application, Plaintiff alleged a disability with an onset date of March 25, 2011. *See* [Doc. No. 7-6] at p.2. The Commissioner of Social Security (the "Commissioner" or "Defendant") first denied Plaintiff's application on July 11, 2011 and, upon reconsideration, again denied the application on October 7, 2011. *See* [Doc. No. 7-5] at pp. 2-5, 9-17. On November 17, 2011, Plaintiff timely filed a written request for a hearing. [Doc. No. 7-3] at

p. 17. Plaintiff's request was granted and a hearing was held before Administrative Law Judge Charles Howard on May 25, 2012. *Id.* At the hearing, Plaintiff testified in support of her application. *Id.* at pp. 34-55. The ALJ also heard testimony from Mark Lenettro, a vocational expert. *Id.*

Shortly thereafter, the ALJ issued his decision denying Plaintiff's disability claim on August 2, 2012. [Doc. No. 7-3] at pp. 17-28. The ALJ denied the claim on the basis that Plaintiff did not suffer from a statutorily-defined "disability." *Id.* Plaintiff timely requested review of the ALJ's decision and the Appeals Council denied review on November 19, 2013. *Id.* at pp. 2-5. Consequently, as a matter of law, the ALJ's decision became the final decision of the Commissioner. On January 13, 2014, Plaintiff filed her complaint with this Court for the purpose of seeking judicial review of the ALJ's August 2, 2012 decision. [Doc. No. 1]. Subsequently, Plaintiff and Defendant filed cross motions for summary judgment. [Doc. No. 9]; [Doc. No. 11].

## II.   BACKGROUND

### A.   ALJ's Five-Step Sequential Analysis

The Social Security Administration (the "SSA" or the "Agency") has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to last for a period of at least twelve (12) months. 20 C.F.R. § 416.905(a). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See*, *e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). If at any step of the sequential evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

To that end, federal law requires that an ALJ evaluate a claimant's application for disability benefits by considering whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment (i.e., from performing "other work"). 20 C.F.R. § 416.920(a)(4)(i)-(v). Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of his or her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step-five, the burden of production shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, work experience, and residual functional capacity. *Grant*, 699 F.2d at 191.

  **B.**  **ALJ's Written Decision**

Following a hearing and a review of the record evidence, the ALJ entered his decision denying disability benefits to the Plaintiff. In his decision, the ALJ made a variety of findings regarding the Plaintiff's work history, medical history, and medical conditions. At step-one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 25, 2011. [Doc. No. 7-3] at p. 19. At step-two, the ALJ found that the Plaintiff suffered from the following severe impairments: bilateral thumb pain; status post arthroplasty in the left thumb; trigger finger; irritable bowel syndrome; hypertension; major depression; and low IQ. *Id.* The ALJ did not identify Plaintiff's alleged dyslexia as a "severe" impairment.

At step-three, the ALJ's written decision considered whether one of the severe impairments highlighted in the step-two analysis fell within the realm of any "listed impairment" found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). [Doc. No. 7-3] at pp. 19-20. After comparing the Plaintiff's identified "severe" impairments to the Listings, the ALJ determined that Plaintiff's impairments, taken alone or in combination, do not "meet[] or medically equal[] the severity of one of the listed impairments" found in the Listings. *Id.*

Prior to beginning his step-four analysis, the ALJ determined the Plaintiff's residual functional capacity ("RFC"). Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, repetitive routine light work as defined in 20 CFR 416.967(b) with the ability to maintain concentration and persistence of simple, routine, repetitive tasks, that involves no concentrated exposure to loud noise or hazards (machinery, heights, etc.) and no more than occasional handling with the left hand or work with the public, co-workers and supervisors.

[Doc. No. 7-3] at p. 20. The ALJ represented that, in developing the RFC, he relied on his assessment of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [as well as] opinion evidence . . . ." *Id.* Despite Plaintiff having testified to suffering from dyslexia, the ALJ did not describe how he considered the Plaintiff's testimony, to the extent her testimony was either credible or incredible, while developing the Plaintiff's RFC. Rather, the ALJ simply disregarded the Plaintiff's testimony to the extent it was "inconsistent with the above residual functional capacity assessment." [Doc. No. 7-3] at p. 24. Further, the ALJ afforded "little weight" to the opinion of one of Plaintiff's acceptable medical sources, who had diagnosed Plaintiff with dyslexia. "[L]ittle weight" was accorded to this report because the ALJ found it to be "not well supported" and "inconsistent." [Doc. No. 7-3] at p. 26. Once the RFC was developed, the ALJ proceeded to steps four and five of his analysis.

-4-

At step-four, the ALJ found that the Plaintiff is unable to perform any past relevant work. *Id.* at p. 26. However, under the step-five analysis, the ALJ determined that Plaintiff is capable of performing the functions of other jobs. *Id.* at p. 27. The ALJ based this finding on testimony given by the vocational expert. *Id.* The vocational expert noted that, given the Plaintiff's age, education, experience, and RFC, she would be able to perform the limited work-related functions associated with "other work," such as an office helper, a routing clerk, and an inspector of electrical equipment. *Id.* The ALJ concluded by finding that the occupations listed by the vocational expert exist in significant numbers in the national economy. *Id.* As a result, the ALJ found Plaintiff to be "not disabled." *Id.*

### III. DISCUSSION

#### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, 2010 U.S. Dist. LEXIS 142595, at *7-8 (W.D.N.C. 2011). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that his decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a *scintilla* and must do more than create a

suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing *Perales*, 402 U.S. at 401); *Rhyne*, 2010 U.S. Dist. LEXIS 142595, at *8. Indeed, "[i]t means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Smith*, 782 F.2d at 1179; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, at *7-9. Critically, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision-makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015). The standard is met by "less than a preponderance" of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, *supra*, at 1456; *Rhyne*, 2010 U.S. Dist. LEXIS 142595, at *9.

Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether the ALJ's finding that she is *not* disabled is properly explained and supported by substantial evidence and that such decision was reached through a correct application of the relevant law.

> **B. The ALJ Failed to Explain his Conclusions when Developing the Plaintiff's RFC, thus this Court cannot Conduct a Meaningful Review and Remand is Required**

In her motion for summary judgment, Plaintiff argues that remand is required because the ALJ failed to determine, during his step-two analysis, that her dyslexia is a severe impairment.

[Doc. No. 10] at pp. 1, 4-6. She also contends that the ALJ failed to explain the functional impact that such an impairment would have on her residual functional capacity. *Id.* Plaintiff shows that she was diagnosed with dyslexia during a May 2012 evaluation by Dr. Joseph Lanier. [Doc. No. 10] at p. 5. She also shows that, during her hearing, she testified that she has trouble reading more than small words, employs a technique called "sight reading," and was in literacy counseling. [Doc. No. 10] at p. 4; *accord* [Doc. No. 7-3] at pp. 38, 50-51. Plaintiff argues that, because the ALJ did not include a limitation for her dyslexia in her RFC assessment, the vocational expert did not consider it in his testimony as to what other jobs the Plaintiff is still capable of performing in the national economy. [Doc. No. 10] at pp. 5-6. Her prayer for relief requests that the Commissioner's decision be vacated and that this matter be remanded for further administrative proceedings.

Defendant opposes the Plaintiff's motion for summary judgment. [Doc. No. 12]. Defendant argues that Plaintiff's motion should be denied because the ALJ *did* consider Plaintiff's claim of dyslexia and rejected it. Defendant cites to instances in the ALJ's decision where the ALJ specifically referred to the Plaintiff's claim of dyslexia. *See* [Doc. No. 12] at p. 4; *accord* [Doc. No. 7-3] at pp. 20-21. Defendant argues that the ALJ properly considered this claimed impairment, but ultimately rejected it as a "severe" impairment and declined to include any functional limitations arising from it because he implicitly found substantial evidence weighed against such findings. [Doc. No. 12] at pp. 3-10. In support of her argument, Defendant directs this Court to numerous parts of the record to show that substantial evidence exists to support the ALJ's determination. *Id.* at pp. 3-10. Defendant requests, via her own motion for summary judgment, that the denial of disability benefits be affirmed.

### 1. ALJ's Step-Two Analysis

At step-two of the sequential evaluation process in a claim for SSI benefits, an ALJ determines whether a claimant has an impairment or combination of impairments that is "severe." *See* 20 C.F.R. § 416.920(a)(4)(ii). An impairment will be considered "severe" if it "significantly limits" the claimant's physical or mental ability to do work-related activities. *See* 20 C.F.R. § 416.921(a); Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10, at *3. "[A]n impairment[] that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p,1996 SSR LEXIS 10 at *3 (citing SSR 85-28, 1985 SSR LEXIS 19). If an ALJ finds that a claimant does not have a severe impairment or combination of impairments, a finding of not disabled is appropriate, and the sequential process will end at step-two. Conversely, if a claimant is found to have *at least* one severe impairment at the step-two analysis, the process will continue to step-three. It is well-established that the step-two inquiry is a "threshold question," which acts as a "*de minimis* screening device to dispose of groundless claims." *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).

As an initial matter, Plaintiff complains that the ALJ did not specifically identify her dyslexia as a severe impairment during his step-two analysis and, therefore, remand is required. In his written decision, the ALJ found that the Plaintiff suffers from the "severe" impairments of bilateral thumb pain; status post arthroplasty in the left thumb; trigger finger; irritable bowel syndrome; hypertension; major depression; and low IQ. [Doc. No. 7-3] at p. 19. While the Plaintiff correctly points out that her "dyslexia" is not listed[1] in this analysis, the Court finds that this is not an appropriate basis upon which to order remand.

---

[1] Defendant seems to argue that the ALJ's "low IQ" finding encompasses Plaintiff's allegation of dyslexia. *See* [Doc. No. 12] at p. 11 n.4. The Court is not persuaded by this argument. First, the Commissioner has not pointed the

The case law is clear that an ALJ's failure to list a particular impairment as "severe" during the step-two analysis does not require remand so long as the sequential evaluation continues and the functional effects of any absent impairment are appropriately examined and considered during subsequent steps. *See Conard v. Comm'r*, 2013 U.S. Dist. LEXIS 55233 (D. Md. 2013) (finding harmless error where claimant made threshold showing of a severe impairment regarding other disorders and "the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted [his] ability to work"); *Lewis v. Astrue*, 937 F. Supp. 2d 809, 819 (S.D.W.Va. 2013) (applying harmless error standard where ALJ proceeded to step-three and considered non-severe impairments in formulating claimant's RFC); *Cowan v. Astrue*, 2012 U.S. Dist. LEXIS 41460 (W.D.N.C. 2012) (collecting cases).

Here, Plaintiff admits that the ALJ continued his analysis beyond step-two, and the written decision clearly shows this to be the case. *See* [Doc. No. 7-3] at pp. 19-27. Thus, remand is not appropriate simply because Plaintiff's alleged dyslexia was not discussed at step-two in the sequential evaluation.

### 2.     *ALJ's Analysis Relating to Plaintiff's RFC*

The Court must now consider whether substantial evidence supports the ALJ's assessment of the Plaintiff's residual functional capacity.[2] "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal

---

Court to any legal or medical authorities which equate a "low IQ" and "dyslexia" as comparable conditions of the mind, or which state that either diagnosis is dependent upon or subsumed by the other. Second, if this were truly the ALJ's intention, then he should have explained that intention explicitly within his written decision and directed this Court to the authority on which he relied in arriving at his finding. *See* Section III.B.2., *infra*.

[2] Though Plaintiff has framed her assignment of error as being that the ALJ failed to "discuss" her dyslexia in forming her RFC, the true inquiry before this Court is whether substantial evidence exists to *support* the ALJ's RFC finding. Thus, stated another way, to the extent the RFC does not contain limitations purportedly arising from Plaintiff's dyslexia, the Court must inquire as to whether the ALJ's decision to exclude those limitations is supported by substantial evidence.

requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted). "Record" in this context does not mean the administrative record *as a whole*; rather, it means the ALJ's decision *itself*. This is evident from the fact that a district court is forbidden from developing *post hoc* rationalizations for the ALJ's decision-making process. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("[The Court] must . . . affirm the ALJ's decision only upon the reasons he gave."). On review, the Court must not rationalize an ALJ's decision by raking through the administrative record, as a whole, intent upon finding the factual support necessary to uphold the ALJ's conclusory analysis. *See Radford*, 734 F.3d at 295-96; *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Expeditions of that sort improperly force the district courts to cobble together a factual basis for the ALJ's conclusions – in effect rendering the district court the fact-finder in the administrative process. *Radford*, 734 F.3d at 295-96; *see also Cook*, 783 F.2d at 1173. Such a practice would effectively usurp the ALJ's role in the administrative process and give the ALJ a "free pass." This is improper.

Instead, Fourth Circuit precedent makes clear that it is the *ALJ* who must resolve conflicts in the evidence, make credibility determinations, muster factual support for his decision, reach a decision, and explain his reasoning for reaching that decision – not this Court. *See*, *e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 636-37 (4th Cir. 2015); *Radford*, 734 F.3d at 296; *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). In explaining his decision, the ALJ must create "a logical bridge" between the factual evidence considered and the conclusions reached, so that this Court must not tread new water in reviewing his or her analysis. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion"). If an ALJ's ultimate decision is supported by substantial evidence – i.e., evidence found in the record, which supports the ALJ's conclusion, and to which the ALJ directs this Court

through the written decision – then the decision must be upheld, even if the undersigned disagrees with it. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays*, 907 F.2d at 1456.

In assessing her RFC, the ALJ found that the Plaintiff "can write but has trouble reading big words." [Doc. No. 7-3] at p. 20. He further found that she suffers from dyslexia, among other mental impairments. *Id.* at p. 21. He also found that she has undergone literacy counseling as a result of her dyslexia. *Id.* Upon review of the hearing transcript, the Court notes that the Plaintiff's testimony corroborates these findings. Plaintiff testified she can only read "little words" and "words that you see all the time." *See* [Doc. No. 7-3] at p. 38. She further testified that she "tr[ies] to understand [and] . . . to bring [what she reads] together." *Id.* Moreover, Plaintiff testified to continuing troubles with pronunciation, speech impediments, and deciphering texts. *Id.* at 50-51. Plaintiff's testimony comports with the findings of an acceptable medical source, Dr. Joseph Lanier, whom the ALJ notes diagnosed Plaintiff with dyslexia. *See* [Doc. No. 7-3] at p. 24; *accord* SSR 06-03p, 2006 SSR LEXIS 5 *2-3; *see* [Doc. No. 7-10] at pp. 65-66. Dr. Lanier's report discusses how Plaintiff's dyslexia can affect her capacity to function in a work environment. [Doc. No. 7-10] at pp. 62-70.

In his decision, the ALJ swiftly disregards each of these items of evidence in conclusory fashion. With regard to Plaintiff's testimonial evidence, the ALJ found her allegations not credible because they "are inconsistent with" his "residual functional capacity assessment," despite finding that her "medically determinable impairment" of dyslexia "could reasonably be expected to cause [her] alleged symptoms[.]" [Doc. No. 7-3] at p. 24; *accord* 20 C.F.R. § 416.929. This sort of "cart-before-the-horse" line of thinking is precisely the type the Fourth Circuit rejected in its recent opinion in *Mascio v. Colvin*. *See Mascio*, 780 F.3d at 639 (finding that such a practice "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the

claimant's credibility.'" (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). This error alone requires remand unless the ALJ properly discussed the Plaintiff's credibility elsewhere. *See Mascio*, 780 F.3d at 639. It is evident that, on this portion of the Plaintiff's testimony, he did not.

After summarily discussing the Plaintiff's dyslexia-related testimony at the beginning of his RFC analysis, the ALJ never revisits the Plaintiff's statements or specifically discusses whether he credited them or did not credit them in his analysis. Most importantly, the ALJ never explained *why* he credited or did not credit her testimony as it relates to her dyslexia. The ALJ's only discussion of the Plaintiff's credibility and alleged mental issues relates to Plaintiff's emotional stability, lack of mania or psychosis, lack of psychiatric treatment, and apparently "adequate cognitive skills." With this discussion, the ALJ summarily provides as follows: "The claimant's mental related allegations are partially credible with medically determinable impairments that could reasonably cause some functional limitations." [Doc. No. 7-3] at p. 25. He then concludes that her alleged "symptom severity" does not preclude "simple, repetitive routine tasks." *Id.*

Absent from the ALJ's decision is any *analysis* of Plaintiff's claim of dyslexia, or her claimed inability to understand complex words, commands, or instructions. *Compare* 20 C.F.R. § 416.929; SSR 96-7p, 1996 SSR LEXIS 4, at *11-12 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). The ALJ fails to highlight whether these are claims he found "partially credible" or incredible entirely. It is evident on review that the ALJ failed to build a "logical bridge" between Plaintiff's testimony, the ALJ's acceptance or rejection of that testimony, the reasons for his acceptance or rejection of that testimony, and his conclusion that Plaintiff is capable of performing "simple, repetitive routine

tasks." *Radford*, 734 F.3d at 295; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). It is also plain that the ALJ did not properly assess the Plaintiff's credibility on this issue, but instead prepared her RFC and then rejected contrary testimony that did not fit within that predetermined formulation of her capabilities. *See Mascio*, 780 F.3d at 639. For this reason, remand is required.

Though remand is justified based on the above analysis, the Court's confidence in the ALJ's decision is further eroded by an additional consideration. Regarding Dr. Lanier's report, the ALJ gives his findings "little weight" because (1) his opinion was procured by Plaintiff for the purpose of seeking benefits and after referral from her attorney, and (2) "his opinion is inconsistent with other substantial medical evidence of record and is not well supported by medically acceptable clinical findings and lab diagnostic techniques." *Id.* at p. 26. To substantiate his finding that Dr. Lanier's report is "inconsistent" and "not well supported," the ALJ conclusorily states that Dr. Lanier's opinion does not comport with Plaintiff's "clinical presentations, conservative treatment, and objective tests and scans." *Id.* The Court finds that the ALJ improperly disregarded Dr. Lanier's findings without conducting a proper analysis. *See Radford*, 734 F.3d at 295.

Here, Dr. Lanier's report is highly relevant to the Plaintiff's claim that her dyslexia is an impairment that imposes functional limitations on her ability to work. Indeed, based on the Court's review of the record, Dr. Lanier's report is the only acceptable medical source report which discusses Plaintiff's dyslexia at length, and which describes the types of functional limitations it places upon her. *See* [Doc. No. 7-10] at pp. 61-70. However, the ALJ disregarded this report for, essentially, two reasons, which will be discussed in turn.

First, the ALJ disregards the report because it was procured by Plaintiff, after a referral by her attorney, for the purpose of seeking SSI benefits. [Doc. No. 7-3] at p. 26. This is certainly one

basis on which an ALJ can weigh the report of a medical source. *See* SSR 06-03p, 2006 SSR LEXIS 5, at *6 (finding it appropriate to evaluate an acceptable medical source's opinion on the basis of the "examining relationship" between the source and the claimant); *accord* 20 C.F.R. § 416.927(c)(1). Such a consideration, however, is not necessarily dispositive. Rather, it is but one factor by which the ALJ should evaluate the reliability and credibility of the report. Federal regulations and Agency guidance require an ALJ to evaluate medical source opinions in a multi-pronged fashion. *See* SSR 06-03p, 2006 SSR LEXIS 5, at *6; *accord* 20 CFR § 416.927(c). Thus, the Court must evaluate the ALJ's other reason for disregarding Dr. Lanier's report in order to determine whether the ALJ's analysis is supported by substantial evidence.

The second reason the ALJ disregards Dr. Lanier's findings is because the report is "not well supported by medically acceptable findings" and is "inconsistent with" other evidence contained in the administrative record. [Doc. No. 7-3] at p. 26. This conclusory analysis, however, cannot be approved. While an ALJ may afford "significantly less weight" to a medical source's opinion that is unsupported by clinical evidence or inconsistent with other substantial evidence, *Craig*, 76 F.3d at 590, the ALJ's decision to do so *must* be accompanied by "a narrative discussion" that discusses "*how* the evidence *supports* each [of the ALJ's] conclusion[s]," such that the ALJ's decision is sufficiently specific to make it clear to a reviewing district court "why the opinion [of an acceptable medical source] was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5, at *19-22.

Here, the ALJ overlooked this command by not sufficiently analyzing the weight he afforded to Dr. Lanier's opinion in light of the whole administrative record. For example, the ALJ stated his conclusion that Dr. Lanier's report was not well supported by medically acceptable clinical findings, but did not explain to this Court how he arrived at that conclusion. *See* [Doc. No. 7-3] at p. 26. The ALJ also found that Dr. Lanier's opinion was inconsistent with Plaintiff's

"clinical presentations, conservative treatment, and objective tests and scans," but did not specifically point this Court to any examples of conflicts or inconsistencies that exist in the record. In short, the ALJ's decision does not provide any basis on which this Court may review his conclusion as to the weight given to Dr. Lanier's opinion. *See* 20 C.F.R. § 416.927. Consequently, the Court must disregard this conclusory analysis in its review.

Accordingly, the Court is left with only one reason supporting the ALJ's decision to give "little weight" to Dr. Lanier's opinion – i.e., because it was procured for the purpose of pursuing social security benefits. Because Dr. Lanier's report is essential to the Plaintiff's claim that her dyslexia places functional limitations on her ability to work, the Court does not believe, under these circumstances, that the ALJ's reliance on a single factor of a multi-pronged test for evaluating acceptable medical source opinions constitutes substantial evidence. *See* SSR 96-8p, 1996 SSR LEXIS 5, at *19-22; SSR 06-03p, 2006 SSR LEXIS 5, at *6; *accord* 20 CFR § 416.927. Consequently, the ALJ's decision cannot be affirmed because the Court cannot conduct a "meaningful review" of his findings to determine whether his assessment of Plaintiff's residual functional capacity is supported by substantial evidence. *See Mascio*, 780 F.3d at 636-37; *Radford*, 734 F.3d at 296. Therefore, remand is required.

### 3. The Commissioner's Arguments in Favor of Affirmance are Meritless

The Commissioner argues that the Court should affirm the ALJ because the Plaintiff did not move on the ALJ's credibility assessment of her testimony or his decision to afford little weight to Dr. Lanier's report. *See* [Doc. No. 12] at pp. 9-10. This argument, however, must fail. It is true that the Plaintiff did not explicitly move on these grounds. Yet, it is also true that the Plaintiff's Motion essentially challenges whether the ALJ's RFC assessment is based upon substantial evidence. Plaintiff argues that the ALJ did not analyze or explain how her dyslexia fit within his

calculation of her residual capacity to work. *See* [Doc. No. 10] at pp. 4-6. The Court has reviewed the ALJ's decision and notes that while he *does* discuss Plaintiff's dyslexia, he only does so in the context of summarizing Plaintiff's testimony and Dr. Lanier's report. *See* [Doc. No. 7-3] at pp. 20-21. After summarizing the evidence, the ALJ never again discusses the Plaintiff's dyslexia.

Instead, the ALJ merely discards Plaintiff's testimony and affords "little weight" to Dr. Lanier's findings for conclusory reasons, and then concludes that Plaintiff is capable of performing "simple, repetitive routine" work. *See* [Doc. No. 7-3] at pp. 24-26. Nowhere in his decision is there a "logical bridge" connecting his clear finding that Plaintiff alleges dyslexia and his finding that it does not inhibit her ability to engage in "simple, repetitive routine" work. The Court can only conclude that the ALJ reached that conclusion by disregarding Plaintiff's testimony and by affording "little weight" to Dr. Lanier's opinion. As is discussed above, the ALJ's analysis on both these points is lacking and cannot be affirmed. Thus, while Plaintiff's motion does not explicitly challenge the weight afforded Dr. Lanier's opinion or his credibility assessment of Plaintiff's testimony, her argument against the ALJ's analysis necessarily incorporates such challenges.

Lastly, the Commissioner argues that the ALJ's decision should be affirmed because the administrative record as a whole supports his findings. *See* [Doc. No. 12] at pp. 3-10. Indeed, the Commissioner's brief is brimming with record citations and discussion that is not found within the ALJ's decision. *See id.* This argument must be rejected. In essence, the Commissioner invites the Court to scour the administrative record in search of facts which *could* provide substantial support for the ALJ's conclusions, and thus cure the ALJ's deficient decision on review. Such an argument, however, essentially requests this Court to assume a fact-finding role and to engage in a fact-finding expedition for the benefit of the ALJ – obligations that the law and the Fourth Circuit place upon the ALJ, not the Court, in this context. *Mascio*, 780 F.3d at 636-37; *Radford*, 734 F.3d at

296; *see also Smith*, 99 F.3d at 638; *Cook*, 783 F.2d at 1173. Because it is not this Court's role to hypothesize as to how the ALJ arrived at his findings, or to speculate as to how the ALJ applied the law to those findings, the Commissioner's argument must be rejected.

**CONCLUSION**

It is neither the Commissioner's nor this Court's duty to fill-in the gaps for the ALJ. The Court notes that the ALJ's opinion contains a lengthy summary of the evidence that was before him; yet, when it came time to apply the relevant law to that summary of the evidence, the ALJ's decision fell short. It is not this Court's job to engage in an analysis that the ALJ should have done in the first instance. On remand, the ALJ must take Plaintiff's testimony and Dr. Lanier's report regarding her dyslexia, which he acknowledged in his decision, and further develop his reasons for either accepting or rejecting that evidence.

At present time, the ALJ's failure to appropriately analyze the Plaintiff's testimony and Dr. Lanier's report, as each relate to her dyslexia, and the functional limitations stemming therefrom, is an error that prohibits this Court from determining whether substantial evidence actually supports the ALJ's conclusions. *See Mascio*, 780 F.3d at 636-37; *Radford*, 734 F.3d at 296. When an ALJ's decision suffers from deficient analysis, it is best for the Court to "remand [the matter] to the agency for additional investigation or explanation." *Radford*, 734 F.3d at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Mascio*, 780 F.3d at 640. Such is the case here.

### IV. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1)  The Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

(2)  The Defendant's Motion for Summary Judgment (Doc. No. 11) is **DENIED**;

(3)  The decision of the Commissioner (Doc. No. 7-3 at pp. 14-28) is **VACATED**; and

(4)  This matter is hereby **REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) for further proceedings that are consistent with this Order.

**SO ORDERED**.

Signed: January 5, 2016

Richard L. Voorhees
United States District Judge